IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **JOSE ANGEL EUYOQUE, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:25-cv-00438** |
| | ) | **Judge Trauger** |
| **KLINT ARNOLD, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Jose Angel Euyoque, Jr., a former inmate of the Robertson County Detention Facility (RCDF) in Springfield, Tennessee, filed a civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.) On March 13, 2026, the court granted the plaintiff's IFP application and directed him to file an amended complaint. (Doc. No. 18.)

After receiving an extension of his amendment deadline, the plaintiff filed his Amended Complaint on July 6, 2026. (Doc. No. 21.) The Amended Complaint is before the court for initial review under the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(e)(2), 1915A.

## I. INITIAL REVIEW

A. LEGAL STANDARD

In cases filed by prisoners, the court must conduct an initial screening and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint" or any portion of it is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see also* 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under

28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Amended Complaint states a claim upon which relief may be granted, the court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The court must afford the pro se pleading a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

The plaintiff filed the Amended Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

B. FACTUAL ALLEGATIONS

According to the Amended Complaint, the plaintiff put in a sick call for treatment of torn tendons in his left ankle on August 19, 2024, when he was incarcerated at the RCDF. (Doc. No. 21 at 5–6.) He filed a grievance claiming that his ankle was "sticking out of its socket and hurt[ing]"

(*id.* at 8), but Major Klint Arnold "failed to approve surgery," and Head Nurse Desiree "failed to schedule treatment in a timely manner." (*Id.* at 5.) These defendants were informed of the plaintiff's need for medical treatment, but Arnold "stated it was up to medical" (*id.* at 9), and the medical department delayed in responding to the plaintiff's need, spacing his examinations "5 to 6 months apart." (*Id.* at 8.) The plaintiff was not taken to the hospital even though his "pain was [ex]crucia[ting]." (*Id.* at 7.) His need for surgery was documented by an outside physician in March 2025 (*see* Doc. No. 21-1 at 1–2), but Arnold and Desiree "avoided setting [his] surgery." (Doc. No. 21 at 6.) Meanwhile, Desiree's employer, Southern Health Partners, "failed to enforce grievances written to them about Head Nurse Desiree and let [the plaintiff's] situation and condition worsen[] [t]o the point [he] had no ankle left." (*Id.* at 13.)

When the plaintiff's surgery was finally scheduled after a second outside physician recommended it (Doc. No. 21-1 at 5), "the defendants called to cancel saying they would not pay" "due to him being released." (Doc. No. 21 at 13; Doc. No. 21-1 at 3.) By the time the plaintiff was able to get surgery, his ankle tendons had deteriorated to the point that they could not be repaired, so the joint had to be fused, leaving him with a permanent impairment. (Doc. No. 21 at 13.) The plaintiff claims that he is entitled to damages due to the intentional delay in treating his ankle surgically, as well as the untimely treatment of his pain, in violation of his Eighth Amendment rights. (*Id.* at 4–5, 13.)

C. ANALYSIS

The plaintiff's claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment has both an objective and subjective component. The objective component requires that his ankle condition present a sufficiently serious medical need, *see Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018), *i.e.*, "one that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation and quotation marks omitted). If it does, the subjective component requires that the defendants understood yet consciously disregarded his need for medical treatment. *See Rhinehart*, 894 F.3d at 738. Deliberate indifference has thus been described as "something approaching a total unconcern for [the inmate's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Slone v. Lincoln Cnty., Ky.*, 242 F. Supp. 3d 579, 591 (E.D. Ky. 2017) (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)).

At this initial stage of review, the court affords the Amended Complaint a liberal construction and views its allegations in the light most favorable to the plaintiff. His allegation of great pain and irreparable injury while awaiting medically necessary surgery on his left ankle satisfies the objective component of his claim for purposes of initial review. As to the subjective component, when an outside physician to whom the plaintiff was referred in March 2025 opined that the plaintiff "needs surgery" to perform "intramedullary nailing" and tendon repair (Doc. No. 21-1 at 1), the defendants apparently failed to act on this recommendation or seek a second opinion until December 2025, when another physician recommended "operative fixation." (*Id.* at 5.) While "[a] prison doctor's failure to follow an outside [physician's] recommendation does not necessarily establish inadequate care," *Rhinehart*, 894 F.3d at 742, the court finds that the Amended Complaint's allegations are sufficient at this initial stage to establish a plausible claim that defendants Arnold and Desiree deliberately delayed their response to his need for surgical treatment, perhaps because they knew he was soon to be released from RCDF custody. "When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for nonmedical reasons, their conduct in causing the delay

creates the constitutional infirmity." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004). This claim will proceed for further development against Arnold and Desiree in their personal capacity.[1]

As to Southern Health Partners, that corporate defendant can only be held liable if a policy or custom of the entity was the "moving force" behind the plaintiff's injuries. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (citations omitted); *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014). The plaintiff has alleged that he filed grievances "directly to Southern Health Partners" over the delay in the scheduling of his surgery (Doc. No. 21 at 9) but that Southern Health Partners failed to correct Head Nurse Desiree's dilatory approach. (*Id.* at 13.) At this early stage, the court will allow the claim against Southern Health Partners to proceed for further development.

## II. CONCLUSION

As explained above, the Amended Complaint's Eighth Amendment claim will be allowed to proceed against defendants Arnold, Desiree, and Southern Health Partners.[2]

The Clerk is **DIRECTED** to send the plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each of the three defendants. The plaintiff **MUST** complete the

---

[1] The plaintiff checked boxes on the Amended Complaint form indicating that Arnold and Desiree are sued in their official capacity. (Doc. No. 21 at 3.) However, the court presumes from the nature of his allegations, and from the fact that Southern Health Partners was also named as a defendant, that the plaintiff intended to sue Arnold and Desiree in their personal capacity. "While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Here, the Amended Complaint's allegations against Arnold are not consistent with an attempt to hold his employer, Robertson County, liable. And because Desiree's employer, Southern Health Partners, is also named as a defendant, the official-capacity claim against her is redundant.

[2] The court's determination that the Amended Complaint states colorable claims for purposes of this initial screening does not preclude any defendant from filing a motion to dismiss under Federal Rule of Civil Procedure 12.

service packets and return them to the Clerk's Office within **30 DAYS** of this order's entry on the docket. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on the defendants. Fed. R. Civ. P. 4(b) and (c)(3).

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge